**EXHIBIT P**

BOARD OF SELECTMEN
July 6, 2004

The Board of Selectmen held its regularly scheduled meeting Tuesday, July 6, 2004 in Conference Room A with all five Selectmen present. Selectman Weaver left Executive Session at 7:05 PM and rejoined the meeting at 7:15 PM, left again at 7:30 PM and rejoined the meeting at 8:40 PM.

6:34 Meeting called to order.

6:35 Executive Session
Selectman Barletta moved, Selectman Wile seconded and it was voted on a roll call vote to go into Executive Session with all five Selectmen (Selectman Weaver left Executive Session at 7:05) and the Town Administrator, under MGL Ch39 §23B for reason #2, to consider the discipline or dismissal of, or hear complaints or charges brought against a public officer, employee, staff member or individual; for reason #3, to discuss strategy with respect to litigation and for reason #6, to consider the purchase, exchange, taking, lease or value of real property. Vote 5-0.

EXECUTIVE SESSION

Minutes of Executive Session typed and filed.

7:15 Pledge of Allegiance and Moment of Silence

Approval of Minutes of June 22, 2004, including Executive Session
Selectman Barletta moved, Selectman Wile seconded to accept the minutes of June 22, 2004 as amended and accept the Executive Session Minutes of June 22, 2004 as typed. Vote 5-0.

MINUTES

7:18 Open Session
Chairman Tieri began Open Session by announcing that a letter had been received from Alan Battistelli withdrawing from consideration for re-appointment to the Zoning Board of Appeals. She announced that there is a vacancy on the Zoning Board of Appeals and according to the Town's By-laws Mr. Battistelli could continue to serve until the vacancy is filled. Mr. Battistelli explained in his letter to the Board that he would continue to serve until his chapter 40B application is filed.

ALAN BATTESTELLI

Selectman Clark moved, Selectman Barletta seconded to send a letter of thanks and appreciation for his nine years of service to the Town on the Zoning Board of Appeals. Vote 5-0.

THANK YOU

Toby Arsenian, 95 Granite Street, stated that he recently attended hearings of the Zoning Board of Appeals for parking lots. He pointed out that parking lots are not dealt with in the zoning regulations and did not feel it is appropriate to issue variances for regulations that do not exist, and thought the Board of Appeals should not hold hearings when incomplete applications have been filed.

BOARD OF APPEALS

7:23 Town Administrators Report
Conservation Commission – Plan to Remove Purple Loosestrife:

07-06-04                                                                                          2

LE
ESTRIFE

.Alan MacMillian, Chairman, Conservation Commission, explained that Purple
Loosestrife was an invasive plant of European origin that is hugely destructive because it
has no natural enemies. One way to control its spread is to organize a team of volunteers
to physically remove the plant with hand tools prior to it reaching maturity and going to
seed.

PROVED

Selectman Weaver moved, Selectman Clark seconded to allow the Conservation
Commission to organize a volunteer effort to remove the invasive plant "purple
loosestrife" from town-owned property at Waring Field/Cranberry Marsh. Vote 5-0.

7:28 Selectman Weaver left the meeting.

7:29 Public Hearing
Tarr – Removal from Conservation Commission:

TARR
PUBLIC
HEARING

Chairman Tieri advised how the public hearing would be conducted. She explained that
the hearing would be opened, (it was at the request of Mr. Tarr that a public hearing be
held), charges will be read, Mr. Tarr will have a chance to address the charges, anyone
wishing to speak on his behalf (through the Chair) will have a chance to speak,
complainants will speak, Mr. Tarr will make closing remarks and then the hearing will be
closed and the Board will deliberate.

ED

7:30 Selectman Barletta moved, Selectman Clark seconded to open the public hearing
under MGL Ch40 sect.8C to consider the removal for cause of a Conservation
Commission member. Vote 4-0 Selectman Weaver absent.

Chairman Tieri explained that the Town Administrator has many dealings with
Rockport's Boards, Committees, Commissions, Departments and citizens and had
compiled a letters with charges against Frederick H. Tarr III.

The Town Administrator read from a letter dated June 30, 2004 advising Mr. Tarr that the
Board would be meeting in Executive Session to consider his removal for cause and
listed the charges against him. Mr. Tarr responded to that letter in a letter, received by the
Board of Selectmen's Office on July 6, 2004, asking that the hearing be held in public
and that the public be allowed to participate.

FREDERICK H.
TARR III

Frederick H Tarr III responded to allegations stating that he was extremely sorry that this
occurred. He stated that he worked for the Town for many years in many capacities with
different teams of good people and has never offended or been vitriolic to anyone. The
"death penalty" comment was to bring the tone of a Conservation Commission meeting
down. It was an outlandish comment to ease a very tense situation and everybody
laughed at it. It was a comment made to bring things back into perspective. Mr. Tarr in
response to a letter written by Ms. Kelly regarding his behavior at said meeting explained
that Mrs. Kelly had previously given him "an earful" after Town Meeting when he
received a rather agitated phone call regarding the delay of tearing down the restrooms at
Front Beach for possible preservation. It was an unpleasant tirade, but he was not
unpleasant to her. In response to an outburst at a Community Preservation Meeting, Mr.
Tarr stated that he spoke with Mrs. Fleming and was informed that she filed no complaint
against him. The Town Administrator explained that it was a verbal complaint where

07-06-04                                                                                    3

Mrs. Fleming asked if there was a way in which he (Mr. Tarr) could be removed from the
Community Preservation Committee. Mrs. Fleming also informed the Town                    RESPONSE TO
Administrator that she planned to talk to Mr. Tarr about his actions at their meetings.  ALLEGATIONS
Since the incident was reported to the Town Administrator, he had the responsibility of
reporting the conversation about a public official to the Board of Selectmen. Mr. Tarr
stated that the newspaper article was unfortunate and hoped that he corrected it in a
subsequent letter to the Times. He contended that what appeared in the article were not
his ideas or his quotes, but rather the tenor and comments of the public from phone calls
that he received. In response to an e-mail from Mr. Cannone alleging that Mr. Tarr made
racial slurs against him at a Town Meeting, Mr. Tarr stated that Mr. Cannone was passing
out literature at the door of Town Meeting which is prohibited by law. When Mr. Tarr
approached him with that fact Mr. Cannone shoved him and started yelling something
that could not be understood. Mr. Tarr told Mr. Cannone that he was a guest in this
country and should obey the laws while he is here. Mr. Cannone refused to obey the law
so Mr. Tarr told a policeman who was inside and the policeman took care of the problem.
In response to an outburst at a Building Study Committee Meeting, Mr. Tarr stated that
he attended that meeting as a private taxpaying citizen who wanted to seek other
alternatives to tearing down the Front Beach Restrooms. He also wanted to seek funding
for grants through the Community Preservation Committee. He was upset with the
Committee because of an attitude that the deal was done and they were not interested in
preserving the Front Beach Restrooms, getting grants or saving money for the Town. Mr.
Tarr admitted to being upset but he did not think that he was vitriolic. Mr. Tarr in
response to the Gibbons letter stated that he had not seen the letter and was not aware of
its content. He did not feel that he was discourteous to the Gibbons after several visits to
their property and has worked with Mrs. Gibbons on the wild life committee as well as
the Town Democratic Committee. Mr. Tarr admitted that he was sorry that everything
was blown out of proportion. He has tried to serve the Town, he did not think that he was
rude to anyone and did not think that anyone could take his death penalty comment
seriously. It was a facetious comment that he was sorry for which was not meant to
offend.

Chairman Tieri read from a letter dated June 18, 2004 from David and Georgia Gibbons
alleging that "Mr. Tarr has tried to throw us off our land, slandered my wife, openly said
that the commission had no intention of voting for our project ...", "witnessed instances   GIBBONS
of other cases where Mr. Tarr has made inappropriate comments ..." and "...audiotapes     LETTER
of those meetings and are available for review." Mr. Tarr denied the charges brought
against him by the Gibbons. Chairman Tieri stated that she attended a Community
Preservation Committee Meeting on June 24th when Mr. Tarr stated that the Front Beach
Restrooms had not been condemned, even though it was public knowledge that the
Inspector of Buildings had condemned the building. Mr. Tarr stated that he did not
remember making that comment. If he did make the comment it was in error and he
apologized.

Patricia Pierce, 8 Tarr's Lane West, stated that Mr. Tarr has done nothing wrong and has
not hurt anyone. Elaine Clark, 7 Landmark Lane, said that Mr. Tarr has devoted many     PUBLIC
hours to the Town. He made unwise remarks because he cares so much and no one ever      COMMENTS
takes him seriously. She felt Mr. Tarr should be admonished, but not removed from the
Conservation Commission. Lou Stamos, 78 Penzance Road, thought Mr. Tarr had already
suffered enough humiliation for his frivolous remarks. Toby Arsenian, 95 Granite Street,

07-06-04                                                                          4

stated that Mr. Tarr was a knowledgeable, hard working member of the Conservation Commission that did a good job. Paul Weiss, 4 King Street, stated that the destruction of a landmark deserved an outrageous comment, but it did not warrant removal from the Conservation Commission. Kathryn Heinze, 215 Main Street, has known Mr. Tarr since he was five years old and stated that he cares deeply about Rockport. Mr. Tarr's comments are how he expresses himself. Stevan Goldin, 163 Magnolia Avenue, Gloucester, stated that the "death penalty" comment was meant to be humorous. Dick Geehan, 7 Boulder Top, stated that Ted Tarr has done plenty for the Town. Ms. Alfieri, 18 Rowe Point, thought Mr. Tarr's comments were inappropriate but the punishment should fit the crime. Virginia LePlante, Norwood Avenue, said that Mr. Tarr has always protected the environment and stood up for Rockport. Peter Goodwin, 4 Thurston Place, stated that Mr. Tarr marches to a different drummer but it does not make sense to throw out the baby with the bath water. Alice Segel, 48 Main Street, asked that the Board not dismiss Mr. Tarr. Andy Heinze, 215 Main Street and Conservation Commission member, stated that he has been at many meetings where Mr. Tarr has made inappropriate comments. Mr. Tarr does not bite his tongue when he is bothered, he says what he feels. Peter Murray, 5 McKay's Drive and Conservation Commission member, thought that Mr. Tarr made comments to relieve the tension that was in the room and Mr. Tarr is not always politically correct when he speaks.

There were no statements made against Mr. Tarr from the audience.

BOARD'S
COMMENTS

Selectman Clark reported that the Board had been dealing with this personnel issue for almost two months. He felt there was a need to balance respect with the rights of individuals and that it is the duty of the Board to respond to complaints. It was Mr. Tarr who requested that the matter be made public. Selectman Clark pointed out there have been a number of complaints of rude and offensive behavior against Mr. Tarr while he has been on the Conservation Commission and the comment about the death penalty is not an isolated occurrence.

Selectman Barletta stated that he was not at the Conservation Commission Meeting when the incident took place. He does not condone improper remarks and was sure that Mr. Tarr would be more careful in the future. Selectman Barletta felt Mr. Tarr should be admonished and then be allowed to go forward.

CLOSING
COMMENTS

In closing comments Mr. Tarr stated that he did not mean to offend anyone. He admitted that his statements were not always politically correct, but most people are used to him. He has never intentionally insulted anyone. The quotes in the paper were not his and he sent a letter stating such. He stated that he will try to be more politically correct but was not sure if it would work or not. Mr. Tarr said that he would try to be more cautious and was sorry that this hearing had to be held.

CLOSED

8:20 Selectman Barletta moved, Selectman Wile seconded to close the public hearing. Vote 4-0 Selectman Weaver absent.

BOARD
COMMENTS

Selectman Wile pointed out that the Board had been considering Mr. Tarr's behavior for months. The incident and repercussions from Beach Street were a very serious matter. Everyone in Town was aware that the demolition of the Beach Street house would be granted once all the permits were in place. Selectman Wile stated that she nominated Mr.,

07-06-04                                                                                              5

Tarr to the Conservation Commission to represent the Town because of his knowledge of
the environment, however it is not proper for public officials to be disrespectful,
outspoken and flip. She explained though, that she did not want to erase the good work
performed by Mr. Tarr.

Chairman Tieri echoed the comments of Selectman Wile. She stated that it was not
healthy for new committee members to witness improper behavior. Common courtesy is
instrumental to society and Mr. Tarr has exhibited a pattern of improper behavior.

Selectman Clark moved, Selectman Wile seconded to remove Mr. Frederick H. Tarr III,          REMOVED
from the Rockport Conservation Commission for cause, under MGL Ch40, sect.8C, after          FOR
a continuing pattern of inappropriate behavior while representing the Town of Rockport       CAUSE
as a public official. Vote 3-1 Selectman Barletta opposed, Selectman Weaver absent.

8:27 Recess

8:40 Police Station Building and Design Committee
Chairman Tieri congratulated the Police Station Building and Design Committee for the
excellent job that was done in the design and building of the new Police Station.

Steve Vavak, Chairman of the Police Station Building and Design Committee, pointed          OUTSTANDING
out that there were still a few outstanding issues and a punch list of items that could be  ISSUES
completed by the Police Chief. Sandy Jacques, Committee member, has completed a
financial report on the status of the finances of the project.

Selectman Barletta was concerned about a list of outstanding issues and questioned who
would complete the jobs. The new Police Station has been turned over to the Town and
the DPW will work with the Police Chief on outstanding issues. Selectman Wile
questioned whether it was necessary to disband the committee at this time or wait until
July 29th. It was the consensus of the Police Station Building and Design Committee that
it would be all right to disband the Committee at the present time.

Each member of the Board publicly thanked all the members of the Police Station
Building and Design Committee.

8:49 Anthony Pizzimenti
Interview for Harbor Advisory Committee:

Mr. Pizzimenti was not available for an interview. It was the consensus of the Board that
it would table the interview until Mr. Pizzimenti was available to speak with the Board.     TABLED

Town Administrator's Report continued:
Committee Reappointments:
The Town Administrator requested that the Board review a memo entitled Committee             COMMITTEE
Appointments, Resignations and Vacancies dated June 10, 2004 from the Executive             RE-
Assistant.                                                                                  APPOINTMENTS

Selectman Barletta moved, Selectman Weaver seconded to appoint the individuals as
detailed in a memorandum dated June 10, 2004, to serve additional terms as listed and

07-06-04                                                                                        6

send letters of thanks to those committee members who did not want to be reappointed.
Vote 5-0.

Selectman Weaver read the names of those to be reappointed. **Affordable Housing Advisory Committee** – one-year term; Peter A. Anderson, Frederick H. Tarr, III, Neal Jacobs, Mary Ruth Sole, Melvyn Michaels, Advisors, Joseph J. Mueller, Abraham Newman, Nancy Trott, Ann Hewitt, **Ambulance Committee** - one-year term; Rosemary Lesch, Scott W. Story, Ruth C. George, **Beautification Committee** - one-year term; Stephanie Woolf, Michael T. Sullivan, Terry Duffy, William Rudolph, Laura VandenBurgh, James M. Cox, **Board of Health** - one-year term; Dr. Sydney M. Wedmore, Dr. Russell Sandfield, Richard Meringer, **Building Study Committee,** Peter W. Beacham, Russell C. Anderson, Stephen M. Vavak, Ronald J. O'Brien, Neal Jacob, Jonathan T. Weaver, Ex Officio, **Emergency Management CARES (Cape Amateur Radio Emergency Services) members** - one-year term; Milton Ratynski, Robert Smith, Richard H. Ober, **Granite Pier Committee** - one-year term; Kristian H. Juncker, Michael Tupper, John W. Thompson, Ralph Lazzaro, Jr., John Krenn, **Information Technology Committee ;** Joshua Brackett, Ronald Spica, Tim Kane, Hope Coffman, Bernie Halupowski, Jeffrey Civitarese, Michael J. Racicot, Roberta Josephson, Rosemary DiTullio, **Memorial Day Parade Committee** - one-year term; Claire Franklin, Emma Trotter, Stephen DeMeule, Francis P. Brewer, Arthur Erickson, June Sullivan, Keva O'Neil, **Millbrook Meadow Committee** - one-year term; Alice Segel, Marcia Lombardo, Samuel W. Coulbourn, Jennifer McCarthy, Frederick H. Tarr, III, Isabel Natti, and for Martha J. Coulbourn and Beverly Robbins – Accept resignation & send a letter of thanks, **Pigeon Cove Fire Station Site Search** – one-year term; Russell Anderson, James Parisi, James Doyle, George Hobbs, Phillip Tanson, Stephen Demarco, Bruce Rowell, Rosemary Lesch, Frank Hassler, Ex Officio, Jonathan T. Weaver, Ex Officio, **Recreation Committee** - one-year term; Donna Marshall, Melissa Marshall, Kim Lorden, Dianne Parisi, & Jessica Hase, and for Mary Anderson, Robert Anderson and Eric Lorden – Accept resignation and send a letter of thanks, **Thacher Island Town Committee** - one-year term; John E. Bennett, Rosemary Lesch, Mary E. Bennett, Richard W. Morris, Seth Cutter, Robert M. Smith, Harry L. Walen, John Krenn, Daniel Karr, Dr. Sydney Wedmore, Carol Delaney, **Town Owned Art Committee** one-year term; Donald A. Mosher.

VOLUNTEERS
NEEDED

Selectman Barletta pointed out that volunteers are needed for the Town Owned Art Committee. The Committee has tried to get funds to restore Town owned art through Community Preservation funds, but learned that it would not be an appropriate use of funds from Town Counsel. Selectman Barletta suggested that an article be placed on the Town Meeting Warrant for funds for art restoration.

ROWE
PARCEL DEED
RESTRICTION
COMMITTEE

Eric Hutchins, Chairman of the Rowe Parcel Deed Restriction Committee, stated that his Committee would need to be re-appointed if it was to continue to serve. The Board will review the regulations to determine if the Rowe Parcel Deed Restriction Committee will need to be re-appointed if it only needs to meet a few more times prior to completing its charge.

Legal Update:

07-06-04                                                                          7

The Board had no questions regarding the Town Counsel's Action List. The Town
Administrator pointed out that Town Counsel would be at the next Selectmen's Meeting
for her Quarterly Report.

Activities Report:
The Town Administrator explained that with the close out of FY04 there are now issues               BUDGET
with FY05. The DPW and the Finance Committee will meet next week for Reserve Fund                    ISSUES
transfers. There is a deficit in the DPW Labor account because an additional employee
was hired despite no funds in the budget. There are sufficient funds in the Reserve Fund
to cover the expense.

The news on Local Aid from the Legislative Committee is that Rockport will be level                 LOCAL AID
funded and receive the same amount as last year.

The Dog Officer is in need of a new kennel. The old one is no longer usable and should              KENNEL
be replaced with one of sturdier quality.

The Parking Clerk has been relocated to the old Police Station. The wall petition of her            PARKING
old office will be moved to increase office space for the Board of Health and Planning              CLERK
Board.

9:10 Action List
Beautification Committee Appointment – Nancy Blue:                                                   NANCY
Selectman Clark moved, Selectman Barletta seconded to appoint Nancy Blue to a one-                   BLUE
year term on the Beautification Committee. Vote 5-0.

Authorization for Town Administrator to Sign Council on Aging Grant:                                 COUNCIL
Selectman Barletta moved, Selectman Wile seconded to authorize the Town                              ON AGING
Administrator to sign and execute contracts related to Council on Aging Grants. Vote 5-
0.

Zoning Board of Appeals re-appointment – Alan Battistelli:
Chairman Tieri announced a letter had been received from Alan Battistelli withdrawing
his name for consideration on the Board of Appeals.

1953 Fire Engine – Bid Recommendation:
The Town Administrator stated that the Forest Fire Warden had originally said that the
old fire engine was worth about $8,000. When it was advertised the first time there was             1953 FIRE
no bid and the second time the only bid received was for $1,101. The Fire Warden felt                ENGINE
that the bid was not high enough and recommended that the Board reject the bid. The
Town Administrator spoke with the Attorney General and confirmed that if the old fire
engine is worth less than $5,000 it is not subject to Chapter 30B and could be advertised
in the regular classified section of the newspaper. The Fire Warden has agreed that the
old fire engine is not worth what he originally thought and feels now it is worth less than
$5,000 and has asked that the truck be advertised again in the newspaper. It was the
consensus of the Board that the fire engine would be advertised one more time in the
regular classified section of the Times.

07-06-04                                                                                                                    8

Selectman Clark moved, Selectman Wile seconded to reject the bid from Gail Foster,
Wareham, MA of $1,101 for the 1953 Ford Fire engine. Vote 5-0.

Open Fall Town Meeting Warrant – September 13, 2004:
The Town Administrator requested that the Board open the Fall Town Meeting Warrant.
He explained that if citizens needed help with language for Town Meeting Articles that
he would be available. The Fall Town Meeting Warrant will close on August 3, 2004.

Selectman Weaver moved, Selectman Barletta seconded to open the warrant for the
September 13, 2004 Special Town Meeting. Vote 5-0.

Other Announcements/Business:
Holly O'Connor, Director Rockport Chamber of Commerce Board of Trade, announced
that there had been a film crew in Town on the July 4th, filming for a documentary called
the American Creed. The documentary will air next July 4th. She thanked the Police and
the Peg Leg Parking Lot for their cooperation during the filming.

Chairman Tieri announced that she and Selectman Barletta attended the annual meeting
of the Long Beach Association. The meeting was very productive and a list of concerns
has been forwarded to the Department of Public Works.

The following items were signed: 1) Transfer of lease for #101 Long Beach for David P.
Leland & Richard O. Billings and #69 for Richard O. Billings & Deborah A. Billings 2)
Home Occupation Permit for Patrick J. Moroney, PKM Design, 16 Mt. Locust Avenue

Warrants were signed for FY04 for Payroll and Expenses for the week of July 1, 2004 in
the amounts of $79,974.59 and $311,320.80 respectively and for Expenses for the week
of July 8, 2004 in the amount of $137,459.43 and for FY05 for Payroll and Expenses for
the week of July 8, 2004 in the amounts of $137,512.55 and $25,610.30 respectively.

9:20 Selectman Clark moved, Selectman Barletta seconded to adjourn. Vote 5-0.