UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action Docket No. 04-12091-NMG

FREDERICK H. TARR
    Plaintiff

v.

TOWN OF ROCKPORT, MICHAEL
RACICOT, NICOLA BARLETTA,
CHARLES CLARK, ROXANNE TIERI
and JOANNE WILE
            Defendants

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PLEADINGS REGARDING CERTIORARI REVIEW UNDER F.R.C.P. RULE 12 (c)

I.  INTRODUCTION

Frederick H. Tarr, III, the Plaintiff in the within action, brought this action pursuant to M.G.L. Chapter 249, sec. 4 as an appeal from an unlawful order of the Board of Selectmen of the Town of Rockport (hereinafter referred to as "BOS"), discharging him from his position as a Conservation Commissioner for cause pursuant to M.G.L. Chapter 40, sec. 8c.

On July 6, 2004, by a vote of 3-1, the BOS voted to remove Mr. Tarr because what they deemed as an on-going pattern of mean spirited, rude, disrespectful and inappropriate comments to attendees and applicants at public meetings.

By way of background, Mr. Tarr had held elective office in Rockport for almost thirty years, including seven terms as a selectman, including a stint as Chairman, Chairman of the Planning Board, as well as serving on countless boards and committees during that time without once being called before the BOS or any other entity within the Town for any inappropriate behavior.

On or about May 19th, at a Conversation Committee meeting, during a heated discussion among members of the Committee and angry residents about the punishment that should be meted out to an offending contractor, Mr. Tarr in an attempt to bring some

levity to the proceedings, stated, "perhaps we should reinstate the death penalty" or words to that effect. Many in the audience and on the Committee laughed and another Board member said "perhaps we should even bring back the electric chair".

The following day, the local newspaper reported on the hearing and included Mr. Tarr's remarks. Shortly thereafter, one citizen wrote a letter to the Chairperson of the BOS commenting on the tone of the meeting and suggested that the BOS bring in someone to run a seminar on the proper way to run a meeting.

On June 1, 2004, Michael Racicot, the Town Administrator, who has had an ongoing personal dispute against Mr. Tarr, wrote to him and informed him that because of his extremely inappropriate comments to attendees at a public meeting, that the BOS would hear complaints and charges against him in Executive Session at its regularly scheduled meeting on June 8th.

On June 8th, at the Executive Session, Mr. Tarr requested the hearing be held not in Executive Session but in public. The Chairperson at the public hearing said that due to the report in the Gloucester Daily Times and the letter referred to above, it was reported that he made extremely inappropriate comments. Mr. Tarr responded that the comment was facetious and an attempt to bring levity to the situation.

The Chairperson asked if the Board wanted to pursue the matter any further and a Motion was made for a public hearing on removal for cause, which was approved (see Exhibit C to Certified Record provided by the Town).

The next meeting was June 22nd, but no action was taken, nor evidently was there any discussion regarding the issue by members of the BOS (see Exhibit K to Certified Record).

On June 30, 2004, Michael Racicot wrote to Mr. Tarr regarding a hearing to be held on July 6, 2004, indicating the reason therefor and also listed the evidence that would be presented. Of interest is that the meeting was scheduled for July 6th and the letter was sent just prior to a holiday weekend without any of the accompanying letters which Mr. Racicot intended to present as evidence (see Exhibit M to Certified Record).

On July 2nd, Mr. Racicot wrote a Memorandum to the BOS as to why, in his opinion, the BOS should remove Mr. Tarr from his position (see Exhibit N to Certified Record).

On July 6th, at the hearing, again which Mr. Tarr requested to be public, the Chairperson announced how the hearing would be conducted. She then stated that the Town Administrator had compiled letters with charges against Mr. Tarr.

Mr. Racicot then read several letters, all dated after June 8th. None of the people who had written to complain were present to present their complaint or to afford Mr. Tarr, who was pro se, to ask them questions about their complaint.

Mr. Tarr then responded to all of the allegations made by the letters read by Mr. Racicot.

The Chairperson then read another letter from critics of Mr. Tarr and then she made her own derogatory comment to which Mr. Tarr responded.

The meeting was then opened to the public. To Mr. Tarr's credit, despite short notice and the fact the meeting took place in the shadow of the July 4th holiday, fourteen fellow residents of Rockport stood and defended him. No one stood to speak against him. All fourteen of the public asked that the BOS not remove Mr. Tarr from his position.

Of interest, Selectman Clark, who had made the motion on June 8th to continue this matter, voiced that there were numerous other complaints about Mr. Tarr, none of which he made public.

The BOS then voted 3-1 to remove Mr. Tarr on a motion by Mr. Clark.

Mr. Tarr filed this suit on or about September 2, 2004 in Essex Superior Court. The matter was removed to this Court on or about September 29, 2004.

## II.     THE LAW AND ARGUMENT

The Legal Residuum Rule does not bar the admissibility of hearsay or other legally incompetent evidence. Such evidence may be admitted as it was in the instant case. The Legal Residuum Rule does, however, require that in the end, when an agency makes its determinations and findings, its discussion must be based upon more than hearsay or other legally incompetent evidence. In other words, where the only evidentiary foundation on which an administrative agency seeks to rely in basing a conclusion or finding is entirely hearsay or other legally incompetent evidence in the record, the Legal Residuum Rule steadfastly bars such an administrative determination. Moran v. School Committee of Littleton, 317 Mass. 591 (1945) and Sinclair v. Director of Division of Employment Security 331 Mass. 101 (1954).

In the instant case, the entire proceeding against Mr. Tarr was based on hearsay evidence. There was not one shred of evidence presented to the BOS by the Town Administrator or the two members of the BOS who added nothing more than totem pole hearsay.

The purpose of an action in the nature of certiorari is "to correct substantial errors of law apparent on the record adversely affecting material rights". Commissioners of Civil Service v. Municipal Court of Boston, 369 Mass. 84, 90 (1975).

The record in this matter was provided by the Defendants in the Certified Record of Proceeding. It clearly shows that the BOS had absolutely no evidence other than hearsay to make its determination. Also of interest is that all of the so-called evidence presented by the Town Administrator and the Chairperson was dated after the initial complaint. One has to ask if in fact the Town Administrator didn't seek some arrows for his quiver because he knew that the Kelley letter (Exhibit A to the Certified Record) wasn't enough to "get Ted".

Another error of law was the fact that there is nothing in the record in the June 8th or 22nd BOS meetings that indicated that the so-called evidence listed on the June 30th letter was to be considered at the July 6th meeting. Nowhere in the record is there any reference to these materials or that the so-called evidence against Mr. Tarr would be presented. This is a clear violation of M.G.L. Chapter 39, sec. 23B (the "Open Meeting Law"). As stated earlier, it would appear that Mr. Racicot contacted certain people who he knew had grievances against Mr. Tarr to write the letters he refers to in his letter and which he read at the hearing on July 6th. Not one of those letters writers nor the reporter for the Gloucester paper chose to come to the hearing and face Mr. Tarr with their complaints, but hid behind the Town Administrator.

This hearing was a charade and this Court should correct the blatant and substantial errors of law, which appear on the record and adversely affect Mr. Tarr's rights and have resulted in a manifest injustice to him.

### III. CONCLUSION

The Court should deny Defendant's Motion for Partial Summary Judgment and should enter Judgment quashing the proceedings complained of by the Plaintiff, or in the alternative, remand the matter to the Essex County Superior Court for determination by that Court.

Frederick H. Tarr, III
Plaintiff
by his Attorney,

PHILIP D. MORAN, ESQ.
265 Essex Street
Suite 202
Salem, MA 01970

(978) 745-6085
B.B.O.#: 353920

Dated: September 20, 2005

09/20  05  15:03  9787412572              PHILIP D MORAN ESQ                  PAGE  08

## CERTIFICATE OF SERVICE

I, Philip D. Moran, Esq., Attorney for the Plaintiff Frederick H. Tarr, III, do hereby certify that on this day I sent copies of the following documents to Attorney Gerald F. Blair, Attorney for the Defendants, by First Class Mail at his usual address of One Foxhill Drive, Suite 110, Walpole, MA 02081-4406, FAX at his usual FAX number of (508) 660-9555 and by E-Mail at his usual address of gblairlaw@comcast.net:

1.  Plaintiff's Opposition to Defendant's Motion for Partial Judgment on the Pleadings Regarding Certiorari Review Under F.R.C.P. Rule 12 (c); and

2.  Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment on the Pleadings Regarding Certiorari Review Under F.R.C.P. Rule 12 (c).

PHILIP D. MORAN, ESQ.

Dated: September 20, 2005